UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TERESA M. MARTINEZ,<br><br>Defendant. | No. 1:08-cr-00087-DAD-1<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582<br><br>(Doc. No. 280) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Teresa M. Martinez. (Doc. No. 280.) That motion is based in part on the purported risks allegedly posed to defendant Martinez by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be granted.

**BACKGROUND**

On March 27, 2008, defendant Martinez was charged by way of indictment with: one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841 (b)(1)(a); and one count of possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(a). (Doc. No. 26.) Following an 8-day jury trial, on

1  March 5, 2010, defendant was found guilty on both counts.  (Doc. Nos. 164, 168, 169.)  On
2  February 28, 2011, at the time originally scheduled for sentencing, the U.S. Marshal's Office
3  informed the court that defendant Martinez had been deported to Mexico in error and a no-bail
4  arrest warrant was issued.  (Doc. Nos. 182, 183.)  Defendant returned to the United States, was
5  arrested in California on June 6, 2012 and the case was re-set for sentencing on September 4,
6  2012.  (Doc. Nos. 188, 189.)  It was determined that under the U.S. Sentencing Guidelines, due in
7  part to the purity of the methamphetamine involved in her offense, defendant Martinez's total
8  offense level was 38 and her criminal history category was IV, resulting in a sentencing guideline
9  range calling for a term of imprisonment of 324 to 405 months.  (Presentence Report ("PSR") at
10  20).[1]  On September 4, 2012, the sentencing judge varied downward from the advisory guideline
11  range after considering the factors set forth in 18 U.S.C. § 3553(a) and sentenced defendant
12  Martinez to a term of 264 months in the custody of the U.S. Bureau of Prisons ("BOP"), to be
13  followed by 60 months of supervised release with terms and conditions.  (Doc. No. 190.)  The
14  court also imposed the mandatory $100 special assessment for both counts.  (*Id*.)  Following the
15  Sentencing Commission's promulgation of Amendment 782, which generally revised the drug
16  quantity table and applied retroactively to previously sentenced defendants, on January 28, 2016,
17  defendant filed a stipulated motion for a reduction in her sentence under 18 U.S.C. § 3582(c)(2),
18  U.S.S.G. § 1B1.10(b)(1), and Amendment 782.  (Doc. No. 256.)  The court granted the motion
19  and reduced defendant's sentence to a term of 262 months imprisonment.  (Doc. No. 257.)
20      Defendant is currently serving her sentence at Federal Medical Center Carswell ("FMC
21  Carswell") in Fort Worth, Texas.  (Doc. No. 290 at 3.)  Defendant's projected release date is
22  February 8, 2031.  (Doc. No. 290-1 at 3.)  According to the BOP public information data from
23  December 14, 2020, a copy of which the government provided in its opposition to the
24  pending motion, defendant has served 102 months of her sentence, which is approximately 39%
25  /////
26

27  [1] Defendant's presentence report ("PSR") was not filed on the CM/ECF docket for this case.  The undersigned has obtained a copy of the PSR from the U.S. Probation Office and has relied in part
28  upon that document for this background and the additional analysis below.

2

of her full term and 45.6% of her statutory term after considering good time credits.  (*Id.*)[2]  Given the passage of time since the filing of the government's opposition, as of the date of this order, defendant has now served approximately 46.5% (104 months) of her custodial sentence.  (*See id.*)

On December 7, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 280.)  On January 8, 2021, the government filed its opposition to the motion, and on January 21, 2021, defendant filed her reply.  (Doc. Nos. 290, 295.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).

---

[2] The court admits its own confusion when reviewing BOP Public Information Inmate Data Sheets and the calculations appearing therein.  In its opposition, the government appears to mistakenly assert that defendant has served only 90 months of her sentence.  (Doc. No. 290 at 3.)  Defendant contends that she has served 137 months, without citing support for that calculation.  (Doc. No. 280 at 17.)  The court notes that the BOP appears to only be giving defendant jail time credits for the time period following her second arrest after she was mistakenly deported while awaiting sentencing in this case.  (Doc. No. 290-1 at 4.)  This may or may not be in error.  On one hand, defendant Martinez was ordered detained by this court on March 19, 2008 and she remained under that order of detention until her mistaken deportation presumably sometime in January or February 2011.  On the other hand, the defendant was also brought to this court out of state prison custody by writ early on in this case (Doc. Nos. 33, 34) and it is unclear whether she was in federal or state custody for part of her pretrial detention.  The court notes that according to the Presentence Report, in March 2008 defendant Martinez was sentenced in the Fresno County Superior Court to 72 months in state prison for possession of methamphetamine for sale.  However, in November 2010 that sentence was vacated on appeal and, on January 25, 2011, she was re-sentenced in that state case to a 4-year term of probation with a condition that she serve 54 days in jail.  In any event, it appears clear that as of the date of this order defendant Martinez has served somewhere in the neighborhood of 50% of the sentence imposed in this federal case.

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[3] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)    extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[4]

---

[3] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[4] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Comm'n, Guidelines Manual ("U.S.S.G.") § 1B1.13 (Nov. 2018)[5]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a

---

where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[5] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that defendant has exhausted her administrative remedies prior to filing her pending § 3582 motion. (Doc. Nos. 280 at 3; 290 at 4.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession of exhaustion of administrative remedies and turn to the merits of defendant's motion.

**B.    Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G.

6

§ 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405

(E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[6]

Here, defendant Martinez argues that extraordinary and compelling reasons warranting her compassionate release exist because of: (1) her age (57 years old); (2) her serious medical issues; (3) and the conditions at FMC Carswell stemming from the COVID 19 pandemic. (Doc. No. 280 at 4–6.) Defendant asserts that she suffers from "a myriad of serious documented health ailments," including diabetes mellitus type 2, stage 5 chronic kidney disease as a result of which she is receiving weekly dialysis treatment required for her to live, heart disease, hypertension, and a cerebral infarction. (Doc. No. 280 at 16.) Defendant asserts that all of these medical conditions significantly "increase her risk of serious illness from an infection of [COVID-19] and underscores her plea to the court for release." (*Id*.) In addition, defendant argues that her "stage 5 chronic kidney disease is more suitably categorized as a terminal illness, i.e., a serious and advanced illness with an end-of-life trajectory." (Doc. No. 295 at 2) (citing U.S.S.G. § 1B1.13, comment (n.1)(A)(i)).[7] In addition to these arguments based upon her specific serious medical conditions, defendant also avers that "FMC Carswell has suffered a large outbreak of [COVID-19] in the past, demonstrating that it is ill-equipped to properly shield [her] from exposure."

---

[6] This provision, however, does not apply here. As noted above, defendant Martinez is only 57 years old, and thus her age and age-related factors do not play a role in consideration of her pending motion.

[7] Defendant contends that her kidney disease is "directly correlated to the neglect of her diabetes mellitus that she has suffered while in the care and custody of the BOP." (Doc. No. 295 at 1–2.) However, the court need not explore that contention in resolving the pending motion.

8

(Doc. No. 280 at 4.) Defendant points out that there have been six inmate deaths at FMC Carswell related to COVID-19. (*Id*. at 7.) When defendant filed her motion on December 7, 2020, one inmate and three staff members had then recently tested positive for COVID-19 at that prison. (Doc. No. 280 at 7.) However, as of the date of this order, 15 inmates and 3 staff members are currently being reported by the BOP as having tested positive for active cases of the virus at FMC Carswell, with 763 inmates there having contracted the virus but being listed as recovered. *See* https://www.bop.gov/coronavirus/ (last reviewed February 22, 2021).[8] Thus, it appears that in a short period of time, the active COVID-19 virus cases at FMC Carswell have, once again, increased significantly.

The government counters that "BOP has taken steps to try to protect inmates' and employees' health and to try to keep COVID-19 outside of its facilities." (Doc. No. 290 at 4.) The government argues that the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release. (*Id*. at 7) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). However, regarding plaintiff's specific health issues, the government also concedes that "type 2 diabetes and chronic kidney disease technically involves an increased risk of severe illness from COVID-19." (*Id*. at 9.) The government also agrees that such defendant's serious, chronic health condition "would be one from which defendant 'is not expected to recover,' and—in the presence of COVID-19—may be both 'serious' and 'substantially diminish[] the ability of the defendant to provide self-care' in a correctional environment." (*Id*.) Nonetheless, the government does note that "Martinez's medical records also indicate that BOP is monitoring and treating Martinez as needed." (*Id.* at 8.)

Defendant Martinez has undoubtedly suffered a very serious decline in her health during her years in prison and her BOP medical records are, not surprisingly, quite lengthy. (See Doc. No. 294 at 1-1065 – sealed.) At the time of her sentencing in September 2012, the PSR reported merely that she was diabetic, required medication to regulate her blood sugar, and also suffered

---

[8] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers in this case.

9

with blood pressure.  (PSR at 13, ¶ 53.)  It was also reflected that she had a family history of diabetes.  (*Id*. at 12, ¶ 49.)  However, following her going into BOP custody her diabetes grew progressively worse and by 2020, she was required to undergo the amputation of her right big toe and a partial amputation of another toe due to diabetic ulceration.  (Doc. Nos. 294 at 1 – sealed; 295 at 2.)  It was also reported by BOP medical staff in December of 2020 that for mobility, defendant had been using a wheelchair the previous three years "initially due to dizziness/lightheadedness, and most recently due to amputation."  (Doc. No. 294 at 1 – sealed .)  Even more serious, however, is defendant's deteriorating kidney disease.  It is undisputed that defendant now suffers from stage 5 chronic kidney disease, otherwise known as end-stage kidney failure.  (*Id.* at 1.)  This is so, even though at the time of her sentencing she apparently did not suffer from kidney disease at all.

In the pending motion defendant's counsel explains that "[m]edical professionals rely upon a measurement called eGFR, or estimated glomerular filtration rate, to determine the health and overall function of the kidneys."  (Doc. No. 295 at 3.)  Normal, healthy functioning kidneys should display an eGFR of 90 or above.  (*Id*.)  According to the BOP medical records,[9] in January of 2019, defendant had an eGFR of only 20.  (Doc. No. 298 – sealed.)  On May 20, 2019, defendant Martinez began on dialysis.  (Doc. No. 294 at 459 – sealed.)  Despite commencement of dialysis treatment, by July 10, 2020, her eGFR had dropped to 9.  (*Id*. at 602.)  On August 12, 2020, defendant's eGFR was reported as 8 and then 6 on October 7, 2020.  (*Id*. at 578, 508.)  Finally, defendant's most recent medical records show that her eGFR dropped to a low of 5 on December 2, 2020.  (*Id*. at 508.)  These readings reflected in defendant's medical records are significant because end-stage kidney failure requires either a kidney transplant or dialysis for the rest of one's life.  The average life expectancy for a patient on dialysis is only 5-10 years.  *See How long can you live on dialysis?*, NATIONAL KIDNEY FOUNDATION, *https://www.kidney.org/atoz/content/dialysisinfo*. (last visited Feb.11, 2021).  Moreover, a 55-year old woman with an eGFR between 15 and 29, which is well above defendant's latest eGFR of 5,

---

[9] The earliest of those records that have been presented to the court go back only to January 28, 2019.  (*See* Doc. No. 298.)

10

has an average life expectancy of only 6.7 years without a kidney transplant.[10]  In short, defendant Martinez now suffers from a number of very serious medical conditions and cannot be expected to survive without ongoing kidney dialysis treatment or a kidney transplant.  Moreover, as one of her BOP treating physician noted on December 11, 2020, her "prognosis is complicated by age [and] multiple comorbidities."  (Doc. No. 294 at 2 – sealed.)

In addition, according to the CDC "[a]dults of any age" who have chronic kidney disease of any stage are at an increased risk for severe illness from the virus that causes COVID-19.  *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated February 3, 2021); *United States v. Cotinola*, ___F. Supp. 3d___, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020) (granting the defendant's compassionate release and finding that his "dialysis-dependent end-stage kidney failure falls within the Commission's definition of a qualifying 'terminal illness.'"); *see also United States v. Brigham*, No. 1:17-cr-00308-NONE, 2020 WL 5995188, at *8 (E.D. Cal. Oct. 9, 2020) (finding that defendant's kidney failure constituted an extraordinary and compelling reason making him eligible for consideration of compassionate release if he otherwise qualified); *United States v. Johnson*, No. 4:16-cr-577-BHH-1, 2020 WL 4501513, at *5 (D.S.C. Aug. 5, 2020) (granting a motion for compassionate release and finding that chronic kidney disease at "any stage is . . . a serious . . . medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); *USA v. Sarkisyan*, No. 15-cr-00234-CRB-15, 2020 WL 2542032, at *2 (N.D. Cal. May 19, 2020) (granting compassionate release to a defendant suffering from hypertensive heart disease, chronic kidney disease, and obesity from which he was not expected to recover).

Here, defendant Martinez has clearly satisfied her burden of showing that "extraordinary and compelling reasons" warrant her compassionate release.  Hypertension, type 2 diabetes

---

[10] Guy H. Neild, *Life Expectancy with Chronic Kidney Disease: An Educational Review*, NCBI (Apr. 26, 2016) (https://www.kidney.org/atoz/content/dialysisinfo).

1  mellitus, and stage 5 chronic kidney disease, all of which defendant suffers from, are not only
2  serious medical conditions themselves but also high risk factors in connection with COVID-19.
3  Moreover, FMC Carswell has had, and continues to have, one of the worst COVID-19 outbreaks
4  in the entire federal prison system. *See United States v. Galaz*, 477 F. Supp. 3d 1134 (S.D. Cal.
5  2020) (identifying FMC Carswell as one of the most infected prisons in the country and granting
6  compassionate release due to an inability to care for the defendant); *United States v. Gutridge*,
7  No. 3:14-cr-138, 2020 WL 6493948, at *2 (E.D. Tenn. Nov. 4, 2020) (granting compassionate
8  release from FMC Carswell for a defendant who had already contracted COVID-19 and was
9  serving an 168-month sentence for methamphetamine and money laundering offenses); *United
10 States v. Carpenter*, No. 2:14-cr-00309-TLN, 2020 WL 5851129, at *2 (E.D. Cal. Sept. 30, 2020)
11 (finding that the increase in COVID-19 cases at FMC Carswell justified compassionate release on
12 a motion for reconsideration of a previous denial). As indicated above, the BOP is reporting that
13 as of February 22, 2021, 763 inmates at FMC Carswell have recovered from active cases of
14 COVID-19. *See* https://www.bop.gov/coronavirus/ (last reviewed February 22, 2021).
15       In light of all of the above, the court concludes that defendant suffers from multiple
16 serious medical conditions and several of those conditions place her at a substantially higher risk
17 of becoming seriously ill if she were to also be infected by COVID-19. When considered in
18 combination with the severity of the COVID-19 outbreak at FMC Carswell, even if now
19 controlled to some extent, these circumstances are sufficient to support a finding of extraordinary
20 and compelling reasons warranting a reduction of her sentence. Moreover, defendant Martinez's
21 end-stage kidney disease and diabetes are serious medical conditions for which there is no cure
22 and, when considered in combination with her being wheelchair bound at this stage of her life,
23 support a finding that her ability to provide self-care within the prison setting has been
24 substantially diminished. In short, the undersigned finds defendant Martinez's to be a classic case
25 of one calling for consideration of compassionate release in light of her deteriorating medical
26 condition, the onset of the end stage kidney failure that she now suffers from, and given the high
27 risk she faces from COVID-19 which is prevalent at her place of imprisonment.
28 /////

**C.    Consistency With the § 3553(a) Factors**

Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with the sentencing factors set forth in §3553(a).[11]  *Trent*, 2020 WL 1812242, at *2; *see also Parker*, 461 F. Supp. 3d at 979, at *11.  The government focuses its argument in opposition to the pending motion on this issue and, in light of defendant's criminal history and offense of conviction in this case, it is easy to understand why.

The government argues that defendant cannot demonstrate that she is not a danger to the safety of any other person or to the community.  (Doc. No. 290 at 11.)  The government notes defendant's prior convictions, which resulted in the imposition of significant prison sentences.  (*Id.*)  The government also raises concerns that defendant has entered the United States illegally before and will do so again.  (*Id.* at 10.)  Further, the government points out that in sentencing defendant Martinez to a 262-month term of imprisonment, the court already varied significantly downward from the applicable advisory sentencing guidelines range of 324 to 405 months.  (*Id.* at 11.)  Lastly, the government contends that defendant's disciplinary history while in BOP custody undermines any suggestion of her rehabilitation, noting that she was cited for fighting with another inmate as recently as August 2019.  (*Id.*)

Defendant responds that upon her release she plans to return to Mexico, where she is a citizen, to reside with her daughter while she continues to receive kidney dialysis treatments.  (Doc. No. 295 at 4.)  Defendant argues that the government's concern that she would return to the United States is misplaced "as any return to the United States would require [her] to forego life-

---

[11] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

13

saving kidney dialysis treatments and jeopardize her life." (*Id.*) Moreover, defendant also points out that she is now wheelchair dependent, making it highly unlikely that she would illegally reenter the United States. (*Id.*) Defendant finally points out that her criminal history includes no violent crimes and that her entire BOP disciplinary record includes just three minor offenses, two of which occurred back in 2005. (*Id*. at 5.)

As noted at the outset, defendant Martinez is currently serving a 262-month custodial sentence on her convictions for conspiracy to distribute methamphetamine and for possession with intent to distribute methamphetamine. These offenses were extremely serious ones. Defendant offered 5 pounds of pure methamphetamine for sale to a confidential informant. (Doc. No. 290 at 10.)

Defendant's offenses of conviction raise legitimate concerns regarding the danger to the community posed by her request to be released. However, it is also true that none of defendant's convictions have been for violent offenses[12] and that her debilitating medical conditions now make her re-entry into the United States far less likely. Balancing the government's legitimate concerns with these other factors, the court concludes defendant does not pose a danger to the community if granted compassionate release. In the court's view, defendant's short and relatively insignificant disciplinary history during her years in prison also supports this conclusion. *See United States v. Lopez*, No. 97-cr-01117-ACK-2, 2020 WL 6298061, at *5 (D. Haw. Oct. 27, 2020) (finding that defendant "maintained an impressive prison record with only three minor infractions during his twenty-three years of incarceration," which "strongly supports the likelihood that he would remain a rule-abiding individual if released."); *see also United States v. Bass*, No. 97-cr-80235-1, 2021 WL 228904, at *7 (E.D. Mich. Jan. 22, 2021) (finding that defendant's short disciplinary history reflected his rehabilitated character).

---

[12] Specifically, defendant Martinez's prior convictions were: (1) in 2000 for conspiracy to produce false U.S. identification documents with a 24 month BOP sentence imposed; (2) in 2004 again for conspiracy to produce false U.S. identification documents and being a deported alien found in the United States with a 33 month BOP sentence imposed; and (3) in 2008 for possession of methamphetamine for sale with a 72 month state prison sentence originally imposed which was vacated on appeal and a new sentence of probation with a condition of 54 days in county jail imposed. (PSR at 7–11.)

It is true that defendant Martinez has perhaps served a bit less than half of her 262 month prison sentence in this case. However, courts have granted compassionate release in cases involving the service of a fraction of the sentence imposed where a defendant's health conditions rose to the level of being extraordinary and compelling. *See Galaz,* 477 F. Supp. 3d at 1142; *United States v. Fowler*, No. 17-cr-00412-VC-1, 2020 WL 3034717, at *1 (N.D. Cal. June 6, 2020) (granting release for a defendant who had served approximately one-sixth of her sentence because her chronic asthma constituted an extraordinary and compelling reason); *cf. United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). As noted above, it appears that of the date of this order, defendant has served approximately 46.5 percent (104 months) of her statutory term of imprisonment. (Doc. No. 290-1.) However, the court has determined that defendant Martinez has shown extraordinary and compelling reasons warranting her compassionate release. The fact that she may have served a little less than half of the custodial sentence imposed is not determinative of the pending motion. Moreover, it is important to recognize that defendant has already served nearly nine years in prison as a result of her conviction in this case. That significant term of imprisonment reflects the seriousness of defendant's offenses of conviction, promotes respect for the law, and provides just punishment while also affording adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A), (B).

Finally, no unwarranted sentencing disparity will result from the granting of compassionate release here. It is true that defendant Martinez was the principle contact and negotiator in this drug transaction with the confidential informant (CI). (PSR at 20.) However, Martinez also brought the 4 pounds of methamphetamine to the site of the transaction herself, accompanied by co-defendant Gallegos. (*Id*. at 5–6.) Upon her arrest, defendant Martinez informed officers that an additional pound of methamphetamine was at a nearby address which she provided to the officers. (*Id*. at 4.) There, co-defendants Santillanes and Valenzuela, were arrested and the additional pound of methamphetamine was discovered and seized. (*Id*.) Valenzuela admitted to living at the residence. (*Id*.) Santillanes admitted that he was staying

there and that he had driven to Fresno from Los Angeles with Gallegos in a pickup truck that was located there and which also had a hidden compartment used to transport drugs. (*Id.*) Notably, defendant Martinez was not found to qualify for any aggravated role in this offense under the sentencing guidelines. (*Id.*) Moreover, the court observes that in its experience it is not typical for high-ranking members of a drug trafficking organization to personally deliver drugs to the scene of a transaction. Against this background it is noteworthy that Martinez's co-defendants in this case were sentenced to the custody of the BOP for terms of imprisonment of 70 months (Gallegos), 63 months (Santillanes), and 33 months (Valenzuela) respectively.[13] (PSR at 2); *see United States v. Jamil*, No. 1:15-cr-00264-LHK-4, 2020 WL 2614877 at *4 (N.D. Cal. May 21, 2020) (finding any potential risk of sentencing disparities mitigated by the fact that defendant's co-defendants all served less time than defendant, even when he had only served 40% of his sentence). Thus, defendant Martinez has already served far more time in prison than any of her co-defendants. *See Bass*, 2021 WL 228904 at *9 (granting compassionate release to a defendant who had served more time than his co-defendants and concluding that he had served an adequate punishment for his crimes) (citing *United States v. Alexander*, No. 1:04-cr-529, 2020 WL 6268136, at *4 (N.D. Ohio Oct. 26, 2020)).

Make no mistake, defendant's offense conduct in this case was very serious. Her criminal history and apparent lack of remorse upon reentering society in the past fully justified the sentence originally imposed. However, defendant Martinez's health has significantly deteriorated since her sentencing in 2012. Her declining end stage kidney disease makes it increasingly less likely that she would survive the years remaining on her prison term. The risk posed by COVID-19's continued presence at FMC Carswell substantially exacerbates that situation. Defendant Martinez states that she will live out the remainder of her life with her daughter in Sonora,

/////

---

[13] Although the parties have not addressed any potential for unwarranted sentencing disparity in connection with the pending motion, the court finds it to be an appropriate consideration under 18 U.S.C. § 3553(a)(6). All three of Martinez's co-defendants pleaded guilty to conspiracy to possess with intent to distribute methamphetamine. (PSR at 2.) Only defendant Martinez proceeded to trial. (*Id.*)

Mexico if granted compassionate release and continue to obtain her life-sustaining kidney dialysis treatment there. The court finds this to be an appropriate post-release plan.

The undersigned appreciates that § 3582(c)(1)(A) is not a general reconsideration of sentencing provision akin to the prior version of Rule 35 of the Federal Rules of Criminal Procedure. However, because defendant Martinez has shown that extraordinary and compelling reasons exist warranting a reduction of her sentence under the provisions of § 3582(c)(1)(A) and that the granting of her release is consistent with consideration of the sentencing factors set forth in §3553(a), her motion for compassionate release will be granted.

## CONCLUSION

For the foregoing reasons, defendant's motion (Doc. No. 280) is granted. The sentence previously imposed of a 262-month term of imprisonment is reduced to a sentence of time–served pursuant to 18 U.S.C. § 3582(c)(1)(A). All terms and conditions of the previously imposed 60-month term of supervised release shall remain in full force and effect.[14] According to the

---

[14] To reiterate, at the time of defendant's September 4, 2012 sentencing, it was ordered that upon release from imprisonment she shall be on supervised release for a term of 60 months on Counts 1 and 2, to be served concurrently for a total term of supervised release of 60 months. Defendant was directed to report to the probation office in the district of her release within 72 hours of release, not commit another federal, state or local crime, not to unlawfully possess a controlled substance and to submit to drug testing. (Doc. No. 193 at 3.) The standard conditions of supervision were imposed as well as the following special conditions of supervision:

> 1. The defendant shall submit to the search of her person, property, home, and vehicle by a United States probation officer, or any other authorized person under the immediate and personal supervision of the probation officer, based upon reasonable suspicion, without a search warrant. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

> 2. The defendant shall not possess or have access to any paging device or cellular phone without the advance permission of the probation officer. The defendant shall provide all billing records for such devices, whether used for business or personal, to the probation officer upon request.

> 3. Pursuant to 18 USC 3583(d)(3), upon completion of the term of imprisonment, the defendant is to be surrendered to a duly authorized Immigration official for deportation proceedings in accordance with the established procedures provided by the Immigration and Nationality Act. If ordered deported, the defendant, during the term

17

government, defendant Martinez is currently subject to an immigration detainer and will be removed to Mexico upon her release from imprisonment. (Doc. No. 290-1.) Therefore, the court will now order that her term of supervised release will become unsupervised if she is deported as expected.

IT IS SO ORDERED.

Dated:  **February 22, 2021**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE

---

of supervised release, shall remain outside the United States and shall not re-enter the United States without the consent of the Attorney General or the Secretary of the Department of Homeland Security of the United States. Upon any re-entry, lawful or unlawful, into the United States, the defendant shall report in person to the United States Probation Office in the Eastern District of California within 72 hours.

4. The defendant shall register, as required in the jurisdiction in which she resides, as a drug offender

(Doc. No. 193 at 4.)